DECISION
{¶ 1} Relator, Dorothy L. Brown, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that terminated her temporary total disability compensation on the basis that she has reached maximum medical improvement, and to issue an order requiring the commission to reinstate such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In her first and fifth objections, relator objects to Finding of Fact No. 5, as well as the failure of the magistrate to make a finding of fact in regards to a referral letter from the Bureau of Workers' Compensation to relator dated July 3, 2000. The first objection addresses certain deficiencies in the report of Dr. Timothy J. Fallon, as summarized by the magistrate; however, the commission did not rely on the report of Dr. Fallon and any errors in that report are not relevant to the issues herein. In her fifth objection, relator objects to the failure of the magistrate to make a finding of fact in regards to the bureau's July 3, 2000 letter. Pursuant to Civ.R. 53(C)(d)(3)(b), objections are to be made to facts as found by a magistrate, not to factual findings not made. Nonetheless, the referral letter was dated July 3, 2000, and was sent to relator four months after Dr. Julia D. Weinerman's report. Relator fails to make clear how a finding of fact in regard to this letter would affect the outcome of this matter.
 {¶ 4} The remainder of relator's objections address Dr. Weinerman's report. Relator alleges Dr. Weinerman failed to address all conditions of her claim. Ideally, the allowed conditions of a claim would be in the heading of the physician's report; however, a reading of Dr. Weinerman's report shows that all conditions were considered. Contrary to relator's assertions, Dr. Weinerman's report further states she reviewed the medical records from Dr. Charles Kistler, addressing hypertrophic sclerotic changes at L5-S1, thus indicating she considered this allowed condition as well as other degenerative changes experienced by relator. Even Dr. Kistler, relator's treating physician, appears to treat these terms synonymously in his July 3, 1996 report.
 {¶ 5} Last, relator argues that Dr. Weinerman's March 2000 report is inconsistent, in that she found relator's condition had been stable for several years when relator's additional claim for hypertrophic sclerotic changes at L5-S1 was not allowed until June 1999, a mere nine months earlier; however, relator's claim for the allowance of its additional condition was filed in September 1996, although not ruled on until 1999, and the allowance was made retroactive to July 1996. Hence, the condition had existed, apparently without change, for several years and Dr. Weinerman's report is not inconsistent in this regard.
 {¶ 6} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
BRYANT and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution
 APPENDIX A IN MANDAMUS {¶ 7} Relator, Dorothy L. Brown, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which terminated her temporary total disability ("TTD") compensation on the basis that she had reached maximum medical improvement ("MMI") based upon the report of Dr. Julia Weinerman. Relator further requests that this court order the commission to reinstate her TTD compensation.
Findings of Fact:
 {¶ 8} Relator sustained a work-related injury on April 26, 1988, and her claim was ultimately allowed for all the following conditions: "Lumbar sprain; adjustment disorder; aggravation of pre-existing hypertrophic sclerotic changes L5-S1; degenerative changes L5-S1." Relator has not worked since then.
 {¶ 9} At some point in time, which is unclear from the record, relator began receiving TTD compensation.
 {¶ 10} The record contains the July 30, 1996 report of relator's treating physician, Dr. Charles Kistler. In this letter, Dr. Kistler notes the hypertrophic sclerotic changes at L5-S1 which appear to have worsened since the x-rays taken in 1989. Dr. Kistler concluded as follows:
 {¶ 11} "Since these were present on her earlier x-rays, it is my medical opinion, based on reasonable medical certainty, that these degenerative changes are a result of an aggravation of her original injury in Claim #88-31802, date of injury 4/26/88. The patient still continues under a doctor's care and she is symptomatic. However, again, it is my medical opinion that she has suffered an aggravation of her previously existing condition and her diagnostic endeavors have shown that she should have hypertrophic sclerotic changes at L5-S1 and degenerative changes at L5-S1 added to her claim within reasonable medical certainty."
 {¶ 12} On September 27, 1999, the Ohio Bureau of Workers' Compensation ("BWC") had relator examined by Dr. Timothy J. Fallon for purposes of continued entitlement to TTD compensation.
 {¶ 13} In his September 27, 1999 report, Dr. Fallon listed relator's allowed conditions as follows: "Sprained lumbar, sprain of sacrum." Nowhere in his report did Dr. Fallon indicate that he reviewed any other medical records concerning relator nor did he make any mention of the other allowed conditions of aggravation of preexisting hypertrophic sclerotic changes L5-S1 and degenerative changes L5-S1. Dr. Fallon opined that relator had reached MMI.
 {¶ 14} By order dated December 15, 1999, a district hearing officer ("DHO") denied the BWC's motion to terminate TTD compensation on the basis that Dr. Fallon did not examine relator for all of the allowed conditions in the claim.
 {¶ 15} Thereafter, relator was examined by Dr. Julia D. Weinerman who issued a report dated March 22, 2000. In the caption of her report, Dr. Weinerman listed the following allowed conditions: "generalized anxiety disorder, * * * sprain lumbar region and * * * sprain of sacrum." In the body of her report, Dr. Weinerman notes that relator complains of daily low back pain, muscle spasms, and an occasional weakness in her legs. Dr. Weinerman indicated the following impressions following the physical examination of relator: "Chronic low back pain with a history of lumbosacral strain and degenerative joint disease of the lumbosacral spine." Dr. Weinerman noted the following medical records she reviewed which are pertinent to the issue in this case:
 {¶ 16} "Letter from Dr. Charles Kistler to Stephen Mindzak indicating that x-rays show hypertrophic sclerotic changes at L5-S1 which results from an aggravation of original injury. The letter was dated 7/30/96.
 {¶ 17} "Psychological medical examination report by Lee Howard, PhD, dated 3/28/94, page 1 only with review of records indicating x-rays done in 1993 showing mild degenerative changes at T11/12 and L5/S1.
 {¶ 18} "X-ray reports from 1996 of thoracic spine and lumbosacral spine and pelvis indicating minor degenerative changes in the thoracic spine with bilateral facet hypertrophic sclerotic changes at L5-S1 with mild disc space narrowing at L5-S1."
 {¶ 19} Furthermore, Dr. Weinerman was asked to contact the physician of record, Dr. Kistler, to discuss the examination and treatment plan. In response, Dr. Weinerman noted as follows:
 {¶ 20} "* * * I was able to reach Dr. Charles Kistler who confirmed her stable medical plan. Conservative management is appropriate and necessary for her chronic low back pain. She may benefit from other techniques for managing chronic back pain such as a TENS Unit and a trial of a TENS Unit may be helpful for helping her decrease her pain and decrease her dependency on pain medications."
 {¶ 21} Dr. Weinerman concluded that relator had reached MMI, that her condition had been stable for several years and that she is currently under medical management for her chronic low back pain. She noted that no further testing or any different kinds of treatments are planned for her at this time and that vocational rehabilitation is not needed. Dr. Weinerman noted further that it was unlikely that relator would return to any type of work but that if she did, sedentary work with limited standing, no frequent bending, no lifting more than ten pounds would be recommended.
 {¶ 22} The matter was heard before a DHO on September 20, 2000, and resulted in an order granting the motion of the BWC to terminate relator's TTD compensation on the basis of MMI. The DHO noted as follows:
 {¶ 23} "The District Hearing Officer finds, based on the report of Dr. Weinerman, that the allowed conditions have reached maximum medical improvement. Therefore, the District Hearing Officer orders that temporary total disability compensation be terminated effective the date of this hearing.
 {¶ 24} "The District Hearing Officer concludes that Dr. Weinerman's report is some evidence to support a finding of maximum medical improvement. It is clear, per the impressions section of the report and her review of the diagnostic evidence that Dr. Weinerman took into consideration all of the physical conditions recognized in the claim."
 {¶ 25} Relator appealed the DHO decision and the matter was heard before a staff hearing officer ("SHO") on October 27, 2000. The SHO affirmed the prior DHO order and noted specifically as follows:
 {¶ 26} "It is not necessary for an examining physician to state the specific allowed conditions at the start of the report. It is only necessary that the doctor examine all allowed conditions and base their opinion on the allowed conditions.
 {¶ 27} "It is clear from the medical records reviewed by Dr. Weinerman, in particular the X-rays, that she was aware of the [sic] all of the allowed conditions. It is also clear from her report that she examined the entire low back, the area where all of the allowed physical conditions are present. She further conferred with Dr. Kistler, the treating physician, who confirmed a stable medical plan. Clearly Dr. Kistler was aware of all of the allowed conditions and he confirmed a stable medical plan. Dr. Weinerman based her opinion in part on this response from Dr. Kistler. Based upon all of these factors it is found Dr. Weinerman did examine and consider all of the allowed conditions. In light of the length of time since the date of injury, and the lack of any indication from Dr. Kistler of a change in treatment due to the additionally allowed pre-existing and degenerative conditions, Dr. Weinerman's opinion of maximum medical improvement is found per-suasive."
 {¶ 28} Relator's appeal on the basis that Dr. Weinerman clearly did not accept or recognize all the allowed conditions in the claim was refused by order of the commission mailed November 24, 2000.
 {¶ 29} Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 30} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 31} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost or a claimant's injury prevents a return to the former position of employment. Upon that predicate, the Ohio Supreme Court held that TTD compensation shall be paid to a claimant until one of three things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to his former position of employment; or (3) that temporary disability has become permanent. State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. The term "permanent" has been defined as a condition which will with reasonable probability continue for an indefinite period of time without any present indication of recovery therefrom. A finding of MMI precludes payment of further TTD compensation. State ex rel. Peabody Coal Co. v. Indus. Comm. (1993),66 Ohio St.3d 639.
 {¶ 32} Relator contends that the commission abused its discretion by terminating her TTD compensation based upon the medical report of a physician who did not consider all her allowed conditions. Relator contends that, pursuant to State ex rel. Richardson v. Quarto Mining Co. (1995), 73 Ohio St.3d 358, this court should issue a writ of mandamus ordering the commission to vacate its order terminating her TTD compensation. Relator contends that, just as Dr. Fallon did not consider all the allowed conditions, Dr. Weinerman likewise failed to consider all her allowed conditions. For the reasons that follow, this magistrate disagrees.
 {¶ 33} In the Richardson case, the claimant's claim had been allowed for the following conditions: "lumbosacral strain * * * central disc herniation at L4-5 and L5-S1." (Id. at 358.) Claimant was examined by Dr. M.A. Shahabi who issued a report wherein he concluded as follows:
 {¶ 34} "`Mr. Richardson, in my opinion, has reached maximum medical improvement and should be granted in the vicinity of approximately five percent (5%) permanent partial impairment to the body as a whole for allowed conditions recognized for lumbosacral strain based solely on his subjective complaint.' " Id.
 {¶ 35} Based upon Dr. Shahabi's report, the commission denied claimant's request for TTD compensation. Because Dr. Shahabi's disability conclusions were based solely on the allowed condition recognized for lumbosacral strain, without consideration of claimant's allowance of central disc herniation at L4-5 and L5-S1, the Ohio Supreme Court concluded that the commission abused its discretion by relying on the report of a doctor who did not consider every allowed condition.
 {¶ 36} In reviewing the record in the present case, this magistrate notes that in his earlier report, Dr. Fallon clearly did not consider anything other than the conditions of lumbar sprain. As such, the commission had determined that he had not addressed all the allowed conditions. However, in reviewing the report of Dr. Weinerman, this magistrate notes several instances wherein Dr. Weinerman not only noted that she understood the claim to include all the allowed conditions but that she actually addressed and considered those conditions as well. Unlike Dr. Fallon, Dr. Weinerman listed and reviewed specific medical records which included the hypertrophic sclerotic changes at L5-S1 and the degenerative changes at L5-S1. Further, Dr. Weinerman noted that her impressions are that relator suffers from chronic low back pain with a history of lumbosacral strain and degenerative joint disease of the lumbosacral spine. Further, Dr. Weinerman specifically spoke with relator's treating physician, Dr. Kistler, concerning his examinations of relator and his treatment plan and noted that conservative management was appropriate and necessary for relator's low back pain. As noted previously, Dr. Kistler himself described "hypertrophic sclerotic changes at L5-S1" as "degenerative changes" which occurred as a "result of an aggravation of her original injury."
 {¶ 37} Unlike the situation in Richardson, there is evidence in the present case that Dr. Weinerman did know and did consider all the allowed conditions in rendering her conclusion that relator had reached MMI. The fact that Dr. Weinerman inadvertently omitted certain allowed conditions from the heading of her report is not necessarily fatal when the remainder of her report indicates that she was aware of and considered the omitted allowed conditions. Dr. Weinerman clearly examined relator's condition of degenerative disc disease which would include the condition of aggravation of hypertrophic sclerotic changes at L5-S1. In the present case, this magistrate concludes that relator has not demonstrated that the commission abused its discretion by relying on the report of the physician who did not consider all the allowed conditions. Furthermore, relator points to a July 3, 2000 referral letter from the BWC as further evidence that Dr. Weinerman did not consider all the allowed conditions. However, Dr. Weinerman examined relator on March 16, 2000, and this referral letter was not seen by her and has no bearing on Dr. Weinerman's report. As such, this referral letter adds nothing to relator's argument.
 {¶ 38} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion by relying on a medical report of a physician who did not consider all the allowed conditions in determining that relator had reached MMI. As such, this court should deny relator's request for a writ of mandamus.